# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

TAMME M. SAFFA,                          )
                                         )
       Plaintiff(s),               )
                                         )
vs.                                      )   Case No. 03-CV-869-SAJ
                                         )
OKLAHOMA ONCOLOGY, INC.,                 )
                                         )
       Defendant(s).              )

**OPINION AND ORDER**

     The Court heard oral argument on the pending motions in limine.  The Court has considered the arguments and briefs of the parties and made rulings at the hearing.  The Court enters the following order with regard to the motions heard.

     Plaintiff's motion to strike errata sheet to deposition of Pamela Williams, [Docket No. 71-1], is **granted**.  Defendant's motion in limine [Docket No. 72-1] is **denied**.  Plaintiff's motion in limine [Docket No. 84-1] is **granted**; Defendant's motion to deem evidence admissible [Docket No. 104-1] is **denied**; the opposed motion to present testimony of doctor through deposition is **denied** [Docket No. 112]; the sealed motion is **denied in part**. [Docket No. 146-1].  Defendant's second motion in limine is **denied** [Docket No. 91-1]. Defendant's third motion in limine is **overruled** [Docket No. 95-1].  Defendant's fourth motion in limine is **denied** [Docket No. 96-1].  Defendant's fifth motion in limine is **granted in part, and ruling is reserved in part** [Docket No. 97-1].  Defendant's sixth motion in limine is **granted in part and denied in part**. [Docket No. 98-1].  Defendant's seventh

motion in limine is **overruled**. [Docket No. 99-1]. Defendant's sealed motion is **granted in part and denied in part**. [Docket No. 146-1].

**I.**     **Plaintiff's Motion to Strike Errata Sheet to Deposition of Pamela Williams [Docket No. 71-1]**

On May 11, 2005, at the deposition of Pamela Williams, Ms. Williams testified that Dr. Lynch asked her to document certain things abut Plaintiff. Ms. Williams, in her errata sheet, is changing her testimony to reflect that she documented because of prior instructions from Kent and Kay.

Plaintiff relies on *Garcia v. Pueblo Country Club*, 299 F.3d 1233 (10th Cir. 2002) as providing that it is improper to make material changes to alter testimony. Defendant asserts that they are merely clarifying their position. Defendant notes that Ms. Williams knew to document things because of Kent and Kay, and that on that particular time in the record, Ms. Williams believed that Plaintiff was asking who was the "source" of the information about Plaintiff, and the source of the information was Dr. Lynch.

Plaintiff requests that the errata sheets be stricken with regard to two changes by Defendant to the testimony of Ms. Williams. The "actual testimony" of Ms. Williams in the deposition includes the following exchange.

> Q. Had somebody asked you to document things like, let's say, the January 14th bone marrow event?
>
> A. Dr. Lynch.
>
> Q. Okay. And when did he ask you to do that?
>
> A. I would say that – that day.

*See* Deposition of Pamela Williams at 42, ll. 21 - 25.  Defendant's errata sheet contains the following.

> Q. Had somebody asked you to document things like, let's say, the January 14th bone marrow event?
>
> A. Kent and Kay told me to document all personnel issues that were observed by me or reported to me by any physicians, and Dr. Lynch reported this issue to me so I documented it as I had been told to do by Kent and Kay.

*See* Errata Sheet of Williams to p. 42, l 23 of deposition.

The "actual testimony" of Ms. Williams includes the following exchanged.

> Q. How about, did Dr. Lynch ask you to make this memo to Ms. Saffa's file at least with respect to the March 24th event?
>
> A. Yes.

*See* Deposition of Pamela Williams at 57, ll. 21 - 24.  Defendant's errata sheet contains the following.

> Q. How about, did Dr. Lynch ask you to make this memo to Saffa's file at least with respect to the March 24th event?
>
> A. No.  Dr. Lynch did not ask me to make any notes about Tamme.  He just reported to me his complaints and I made notes of those and gave them to Kent and Kay as they had asked me to do for all employees where performance issues had been raised.

*See* Errata Sheet of Williams, to p. 57, l. 24 of deposition.

In *Burns v. Board of County Commissioners of Jackson County*, 330 F.3d 1275 (10th Cir. 2003), the Tenth Circuit Court fo Appeals noted the Tenth Circuit's conservative approach to deposition changes.

> In the recent case of *Garcia v. Pueblo Country Club,* 299 F.3d 1233 (10th Cir.2002), this court discussed the purpose of Rule 30(e). Quoting *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D. La.1992), we noted that "[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Garcia,* 299 F.3d at 1242 n. 5 (quotation omitted). We stated that "[w]e do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony." *Id.*

*Burns* 330 F.3d at 1282. The deposition change proposed by Defendant is a material alteration of the deposition testimony. Plaintiff's motion to strike the deposition errata sheet is **granted**.

**II.     Motion in Limine and Brief in Support by Defendant Oklahoma Oncology [Docket No. 72-1]**

Defendant requests that the Court prohibit any testimony by Plaintiff that she confronted or complained about sexual harassment prior to November 2002. Defendant bases its argument on the principles of judicial estoppel and maintains that Plaintiff's prior testimony before the Oklahoma Employment Security Commission ("OESC") precludes any testimony by Plaintiff that she complained about sexual harassment prior to November 2002.

Plaintiff maintains that she never testified that the "first time" she complained was November 22, 2005. Plaintiff notes that her current testimony does not contradict her prior testimony. Plaintiff also asserts that Defendant's argument should be rejected because Defendant was not a party to the prior case and the testimony did not work an unfair detriment to Defendant.

In *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005), the Tenth Circuit Court of Appeals set forth the prerequisites for judicial estoppel.

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680 (1895). Although noting that this rule, known as judicial estoppel, is " 'probably not reducible to any general formulation of principle,' " *New Hampshire*, 532 U.S. at 750 (citation omitted), the Court noted several factors which other courts have typically used to determine when to apply judicial estoppel. "First, a party's later position must be 'clearly inconsistent' with its earlier position." Id. (citation omitted). Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996). Second, "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " *New Hampshire*, 532 U.S. at 750, 121 S. Ct. 1808 (citation omitted). The requirement that a previous court has accepted the prior inconsistent factual position "ensures that judicial estoppel is applied in the narrowest of circumstances." *Lowery*, 92 F.3d at 224. Third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751, 121 S. Ct. 1808.").

*Johnson*, 405 F.3d at 1069.

The Court has reviewed the testimony before the OESC which was submitted by Defendant and considered the deposition testimony of Plaintiff. Plaintiff did not specifically testify before the OESC that the "first time" that Plaintiff complained about Dr. Lynch's behavior was on November 22, 2002. Defendant cannot satisfy the first prong outlined by the *Johnson* court. Defendant's arguments are better construed as arguments for consideration by the jury. Defendant will be permitted to cross-examine Plaintiff using the OESC testimony. Defendant's motion to prohibit the testimony of Plaintiff is **denied**.

**III.   Motion in Limine by Plaintiff [Docket No. 84-1]; Motion to Deem Evidence and Testimony Admissible [Docket No. 104]; Opposed Motion to Present Trial Testimony of Doctor through Deposition [Docket No. 112]; Sealed Motion [Docket No. 146].**

The Court dealt with all of the motions involving the testimony of a non-party witness as a group. Plaintiff filed a motion to exclude the testimony of the doctor. [Docket No. 84-1]. Defendant filed a motion to deem the testimony of the doctor admissible [Docket No. 104-1]. Defendant additionally filed a motion to present the testimony of the doctor through deposition. [Docket No. 112]. In addition, part of Defendant's motion that is filed under seal addresses the testimony of the non-party doctor. [Docket No. 146].

The Court finds this review is properly conducted under the standards and procedures set forth in Fed. Rule of Evid. 412 (hereafter "Rule 412"). Rule 412(b)(2) requires that, in a civil case, in accordance with Rule 412(c), proper notice must be given to the victim and the hearing must be sealed. The Court is sensitive to the policy concerns of Rule 412 as articulated in *United States v. One Feather*, 702 F.2d 736, 739 (8th Cir. 1983), where the Court found that Rule 412 is designed to protect the privacy interest of victims of sexual misconduct by guarding "against unwarranted intrusion into the victim's

private life." Therefore, this portion of the hearing before the Court was sealed, and the parties complied with the notice requirements of Rule 412.

Plaintiff has moved to prevent Defendant from offering into testimony or providing evidence regarding Plaintiff's four month consensual sexual relationship with a doctor who is not a party to the lawsuit, and which occurred five years before Plaintiff's employment with Defendant. Plaintiff also asserted, at the hearing, that the doctor was, at the time of the affair with Plaintiff, separated from his wife. Defendant asserts that the information is admissible to establish that Plaintiff did not regard Dr. Lynch's alleged advances as undesirable or offensive because she had a prior romantic relationship with a married doctor and because the evidence can be used to impeach Plaintiff's testimony.

The Court finds that the fact the Plaintiff had a consensual sexual relationship with a doctor five years ago is not relevant or probative evidence that helps prove Plaintiff was or was not offended by Dr. Lynch's conduct. It is not probative of Plaintiff's sensibility to the specific conduct in this case. There is no evidence that the Plaintiff was subjected to the same conduct in the prior relationship. There is no evidence that Dr. Lynch knew of the prior relationship or that he thought she would not be offended because of the prior relationship. The Courts finds that the evidence is not relevant under Rule 412 and that, pursuant to Fed. R. Civ. Proc. 403, the prejudicial effect of such testimony outweighs any probative value.

However, if Plaintiff presents the testimony of the doctor at trial, the Court concludes that the information regarding the affair is relevant to the evaluation of the credibility of the doctor's testimony. Similarly, if Plaintiff testifies, at trial, that she "never thinks in terms of affairs," as she has in deposition testimony, the testimony is relevant for impeachment.

The Motion in Limine by Plaintiff, [Docket No. 84-1] is **granted**; Defendant's Motion to Deem Evidence and Testimony Admissible [Docket No. 104] is **denied**; Defendant's Opposed Motion to Present Trial Testimony of Doctor through Deposition [Docket No. 112] is **denied.** To the degree the Sealed Motion addresses this testimony, that portion of the sealed motion is **denied**. [Docket No. 146].

## IV. "Second" Motion in Limine by Defendant [Docket No. 91-1]

Defendant requests that the Court find that the testimony given by Kent Butcher, an employee of Defendant, to the Oklahoma Employment Security Commission during the June 27, 2003 hearing on appeal is inadmissible for all purposes. Defendant contends that Mr. Butcher had not previously reviewed his notes, had asked for the presence of an attorney, had requested his Fifth Amendment rights against self-incrimination, and had no prior knowledge as to the Plaintiff's attorney area of inquiry. Mr. Butcher testified before the OESC that he recalled a prior occasion in which Plaintiff mentioned the "kind of joking and flirtation" that went on between she and other doctors at the hospital, but he did not interpret it as sexual harassment. Defendant maintains that the first complaint about sexual harassment occurred in November 2002.

Plaintiff contends Butcher did not effectively request an attorney and that the privilege against self incrimination is not applicable to the facts of this case.

The Oklahoma Administrative Procedures Act provides the right to counsel for parties or those having an interest in the result. In this case, the record reflects that Butcher asked for his attorney numerous times. The Court will not find that Butcher, a non-attorney, had to formulate his request for an attorney in a specific magical formula. The

record in this case is sufficient to find that Butcher objected to proceeding without his attorney present.

However, the Court cannot conclude that requiring Butcher to proceed without counsel requires the suppression of his testimony in an unrelated proceeding. Defendant recognizes that no Fifth Amendment privileges are at stake since it was not a criminal proceeding. Therefore the question presented to the Court is what is the civil penalty in this trial for the failure in a separate proceeding to allow the witness to consult with his lawyer. The Court concludes that the testimony should not be excluded in this trial. The failure to provide Butcher the opportunity to obtain an attorney does not automatically mean that any statements by Butcher that were made are not admissible in this proceeding. The Court concludes that the statements are admissible in this proceeding. Defendant may present the facts of the prior hearing for consideration by the jury in evaluating the prior statements of Butcher.

The Court has reviewed the cases presented by the parties but is not persuaded that any of the cases present similar scenarios. In the cases provided to the Court, the testimony to be excluded was by an individual not available for the trial. In this case, Butcher is an employee of Defendant and is certainly available to Defendant for direct testimony and cross-examination. *See, e.g. Complaint of Paducah Towing Co.* 692 F.2d 412 8th Cir. 1982).

## V.     "Third" Motion in Limine to Exclude Certain Damages
         [Docket No. 95]

Defendant asserts that Plaintiff should be precluded from offering evidence of lost wages or "front pay" damages. Defendant asserts that Plaintiff can only claim those wages

to which she would have been entitled. Defendant notes that Plaintiff's license was inactivated on March 31, 2003, shortly after her discharge, due to Plaintiff's failure to renew it. Defendant states that Plaintiff should not be permitted any front pay or lost wages after the date her license was inactivated because Plaintiff was not employable after that date.

Plaintiff maintains that the issue of whether or not the suspension of her license would have been sufficient to lead to Plaintiff's termination is a question of fact for the jury. The Court agrees. In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), the Supreme Court found that if an employer later finds "after-acquired evidence" of the employee's misconduct, such that the employee would have been fired, that it may cut off the Plaintiff's damages after the date the employer discovered the misconduct. With regard to the issues and facts in this case, this issue must be decided at the trial of this action.

Defendant also maintains that Plaintiff should be prohibited from making any reference to punitive damages and that punitive damages are not permissible under the facts of this case. Defendant asserts that Defendants' good faith conduct prohibits an award of punitive damages. Defendant notes that if an employer has a method in place for the reporting of sexual harassment, makes a good faith effort to educate its employees about sexual harassment, and, as in this case, investigates the Plaintiff's claims (and the harassment stopped), that those actions preclude any findings permitting punitive damages.

In *Kolstad v. American Dental Assoc.*, 527 U.S. 526 (1999), the Supreme Court of the United States set forth the good-faith defense to punitive damages. The Court considered the availability of punitive damages under Title VII and the imputation of liability for those punitive damages to the employer. The Court rejected the automatic imposition

of punitive damages liability upon an employer based upon the managing employee's actions. The Court observed the tension between such an automatic rule and the principle that an award of punitive damages is improper against an "innocent." *Id.* at 544.

> Recognizing Title VII as an effort to promote the prevention as well as remediation, and observing the very principles underlying the Restatements' strict limits on vicarious liability for punitive damages, we agree that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'

*Id. at 545.* The Court did not specifically define "good-faith efforts." The Court did suggest that compliance would require the employer to make "good faith efforts to enforce an antidiscrimination policy." *Id.* at 546.

In *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241 (10th Cir. 1999), the Tenth Circuit Court of Appeals recognized that the *Kolstad* Court provided only limited guidance with respect to the good-faith compliance standard. The Tenth Circuit indicated that, at a minimum, an employer must adopt anti-discrimination policies and make a good faith effort to educate its employees about the policies and Title VII's prohibitions. *See EEOC v. Walmart*, 187 F.3d at 1248-49.

The Court has considered the arguments of the parties, and concludes that this issue cannot be resolved prior to trial. Defendant's motion is **overruled**. The Court will hear the evidence at trial and determine the appropriate instructions, if any, regarding back pay, front pay, and punitive damages.

**VI.    "Fourth" Motion in Limine to Exclude Evidence of Retaliation
        [Docket No. 96-1]**

Defendant asserts that evidence of Plaintiff's retaliation claim should not be permitted at trial if the Court grants Defendant's motion to dismiss Plaintiff's claim of retaliation. Plaintiff agrees that if the Court grants summary judgment on the retaliation claim that Plaintiff will not present evidence of retaliation.

Defendant's motion was previously denied by the Court, and a motion to reconsider is presently under consideration. The Court hereby **denies** this motion based upon the Court's prior denial of the motion for summary judgment. The Court will modify this ruling if any changes are necessary after the Court rules on the motion to reconsider.

**VII.   "Fifth" Motion in Limine to Exclude Hearsay Testimony
        [Docket No. 97]**

Defendant requests that numerous statements be excluded as hearsay. Plaintiff maintains that Plaintiff will not try to offer hearsay testimony at trial. The Court **grants in part, and reserves ruling in part.** The Court concludes that the majority of these rulings will have to be made at trial. Some testimony that Defendant is attempting to exclude Plaintiff has no intention of offering. With regard to some of the testimony, it will be necessary to know the context of the admission before a ruling may be made. The Court finds that no hearsay testimony by witnesses without a prior conference with the Court shall be permitted. Plaintiff shall give the Court prior notice if Plaintiff plans to offer any testimony identified by Defendant in this motion.

**VIII.  "Sixth" Motion in Limine to Exclude Certain Evidence
[Docket No. 98]**

Defendant seeks to exclude any references to pornography on Dr. Lynch's computer. Plaintiff represents at the hearing that although several individuals talked about someone viewing pornography on Dr. Lynch's computer, that no person who actually viewed it has been located. Defendant's motion is **granted** with respect to any references to pornography on Dr. Lynch's computer. As presented by the parties, the Court concludes that the prejudicial affect outweighs the probative value.

The Court **denies** the motion with regard to emails sent by Dr. Lynch to Plaintiff and references to Pam Williams notes or reports. *See O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093 (10th Cir. 1999).

Defendant additionally requested the exclusion of advertisements for a physician's assistant noting that the advertisement was for a different position in a different hospital. Plaintiff noted that Plaintiff had no intention of introducing such evidence. Based upon the agreement of the parties, Defendant's motion is granted with regard to these advertisements.

**IX.  "Seventh" Motion in Limine to Exclude Stray Remarks
[Docket No. 99]**

Defendant seeks to prohibit the testimony of: (1) any stray remarks attributed to Dr. Lynch that were not directed at Plaintiff; (2) any stray remarks that were not of a sexual nature; and (3) any stray remarks that Plaintiff did not find offensive. Defendant asserts that the referenced remarks are "stray" remarks; that the remarks are gender neutral and therefore not supportive or admissible for a sexual harassment claim. Defendant also

maintains that the remarks are more prejudicial than they are probative, and therefore not admissible under Fed. R. Evid. 403.

Plaintiff asserts that Defendant has seriously misconstrued Tenth Circuit law addressing stray remarks. Plaintiff contends that the remarks are not stray remarks and are admissible to prove a hostile work environment. Plaintiff additionally maintains that the issue is a factual one for the jury.

The Court finds that all of the remarks identified by Defendant are admissible at trial under current Tenth Circuit case law. The Defendant argues that comments such as "my wife will only have sex with me once a month whether I need it aor not," "great ass," "I want a kiss," and "I need a fuck-buddy," are inadmissible either because they were not directed at the Plaintiff, were not of a sexual nature, or because Plaintiff did not find them offensive.

In *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093 (10th Cir. 1999), the Tenth Circuit Court of Appeals considered similar objections in determining what language and conduct should be submitted to the jury for consideration.

> We cannot agree, however, with the court's conclusion that the incidents in which Mr. Jones compared his wife to a Playboy magazine and described a dream about a naked woman jumping on a trampoline were unrelated to gender or sexual animus. Even though these statements may not have been directed specifically at Plaintiff, the nonetheless "have gender-related implications [ ] [and] we cannot, with straight faces, say that [this conduct] had nothing to do with gender." *Penry*, 155 F.3d at 1263. Because of the overtly sexual nature of these incidents, we think a jury readily could find that they were based on gender or sexual animus.
>
> Moreover, we think that a jury reasonably could find that the obviously sex-and-gender-related conduct engaged in by Mr. Jones, Mr. West, and Mr. Haffner created or contributed to a work environment that was charged with gender bias and sexual animus. *See Oncale*, 118 S. Ct. at 1003 (stating that

> evaluation of hostile environment claim "requires careful consideration of the social context in which the particular behavior occurs and is experienced by its target"); *Penry*, 155 F.3d at 1262 (explaining that fact finder in a sexual harassment case should not "'examine each alleged incident of harassment in a vacuum [ ] [because w]hat may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents.'" (*citation omitted*)). In light of this work environment, we think that Plaintiff has at least established genuine issues of material fact as to whether the following conduct was based on gender or sexual animus.

*O'Shea*, 185 F.3d at 1099.

*Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257 (10th Cir. 1998) and *Gross v. Burggraf Construction Co.*, 53 F.3d 1531 (10th Cir. 1995), relied upon by Defendant, do little to support Defendant's position on this issue. In *Penry*, the Tenth Circuit Court of Appeals found that over a period of three years the comments were insufficient to establish a discriminatorily hostile environment. However, the Court concluded that simply because the comments could have been made to a man does not remove all sexual animus or make the comments beyond consideration.

> In light of the record as a whole, we find that at least two of the incidents that the district court found not to be gender-based are nevertheless relevant to the plaintiffs' claims of a hostile work environment. First, Waggoner made comments to both Gillum and Penry about the mall roof looking like a woman's breasts. The district court said of these comments:
>
>> [T]he court is not convinced that Waggoner would not have made these remarks but for [plaintiff's] gender. To the contrary, it seems likely . . . that he would have made the same remark to any associate . . . . Again, while such conduct in a business environment might demonstrate a certain degree of baseness, it does not demonstrate sexual animus or gender

> bias, and [plaintiff] presents no evidence to the contrary.
>
> *Gillum*, 970 F. Supp. at 850; *Penry*, 970 F. Supp. at 839-40. Second, the district court observed that Waggoner had taken Gillum to Hooters while on business travel, and similar to its treatment of the mall roof comments, the district court discounted the Hooters incident as relevant.
>
> The defendants assert that we should not consider either of these pieces of evidence since Waggoner may have been as likely to engage in such conduct in the presence of men, and therefore his conduct was not because of sex. While this may be true, we do not think that the evidence is irrelevant and beyond consideration. . . . It is true that Waggoner might have been just as likely to take a male assistant to Hooters, or that he may have been equally inclined to comment about the shape of the mall roof to a male colleague. In that sense, those incidents were not "because of the plaintiff's gender," and could not be the basis for liability. Nonetheless, these acts have gender-related implications; we cannot, with straight faces, say that Waggoner's trips to Hooters had nothing to do with gender. . . . Even where the motive behind the alleged conduct was not the plaintiff's gender, the court may still consider that conduct relevant when evaluating whether ambiguous conduct was in fact gender-motivated or whether gender-motivated conduct was so severe and pervasive as to create Title VII liability.

*Penry*, 155 F.3d at 1262-63 (*citations omitted*).

In *Gross,* 53 F.3d 1531, the male supervisor had yelled at Plaintiff in front of co-workers, "What the hell are you doing? Get your ass back in the truck." That Court held that the term "ass" is a vulgar expression that refers to a portion of the anatomy of persons of both sexes. Thus, the term is gender-neutral and does not demonstrate gender discrimination. Defendant here argues "the alleged comment about Plaintiff's 'ass' is not based upon sex according to *Gross*, and therefore, constitutes a stray remark as a matter of law." To tell someone to get their "ass back in the truck" is one thing. To refer to the

posterior portions of a woman's anatomy as a "great ass" is quite another. This Court borrows language from *O'Shea* in concluding that it cannot find, with a straight face, that Dr. Lynch's "great ass" comment is not gender based or free from sexual animus.

Defendant's motion is **overruled** by the Court.

### X.    Defendant Oklahoma Oncology's Motion for Admission of Evidence pursuant to Fed. Rule Evid. 412.  SEALED [Docket No. 146-1].

Defendant requests that the Court find that testimony with regard to Plaintiff's behavior at Defendant's 2001 Christmas party, and Plaintiff's own comments and conduct in the workplace, is admissible.

Under Fed. R. Evid. 412, evidence offered to prove sexual behavior or predisposition of the alleged victim is admissible if it is otherwise admissible and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party.

Defendant seeks admission of testimony regarding Plaintiff's behavior and comments about Dr. Lynch at a 2001 December Christmas party. Defendant maintains the evidence is probative with regard to whether Plaintiff was subjectively offended and that the evidence is also probative with regard to Plaintiff's claim of emotional distress damages. Additional testimony that Plaintiff spoke openly about certain matters at work, Defendant argues, is relevant to establish that Plaintiff was not subjectively offended by the remarks.

The Court **grants** Defendant's motion for inclusion of testimony related to the Christmas party. The Court **grants** Defendant's motion for inclusion of testimony regarding

Plaintiff's comments that are relevant to her subjective intent. The Court previously **denied** Defendant's motion regarding the alleged affair with another doctor.

Dated this 20th day of December 2005.

Sam A. Joyner
United States Magistrate Judge