# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

TAMME M. SAFFA,                              )
                                             )
                Plaintiff(s),                )
                                             )
vs.                                          )          Case No. 03-CV-869-SAJ
                                             )
OKLAHOMA ONCOLOGY, INC.,                     )
                                             )
                Defendant(s).                )

## OPINION AND ORDER

The Court heard oral argument on the pending motion for summary judgment and entered an Opinion and Order. Defendant filed a motion for Reconsideration. The Court has considered the motion for reconsideration, and **denies** the motion. [Docket No. 135-1].

**A.      Impact of First and Second Motions in Limine[1/]**

Defendant filed its first motion in limine seeking a ruling that Plaintiff is precluded from offering any evidence that is inconsistent with Plaintiff's prior testimony before the Oklahoma Employment Security Commission ("OESC"). Defendant contends that Plaintiff previously testified before the OESC that Plaintiff "first complained" of sexual harassment in November 2002, and that Plaintiff should be precluded from offering any evidence that she complained prior to November 2002. The Court considered the motion in limine and the arguments of counsel at a hearing before the Court. The Court denied Defendant's motion at the hearing and subsequently issued a written order denying the motion. [Docket

---

[1/] Defendant labels this argument as including both the first and second motions in limine. However, Defendant's brief discusses the impact of only the first motion in limine. Regardless, the Court denied both of the motions in limine referenced by Defendant.

No. 152-1].  Defendant cannot establish the necessary prerequisites for the application of judicial estoppel and Plaintiff's prior testimony does not preclude Plaintiff from testifying at trial that she did complain prior to November 2002.

Defendant maintains that if the Court prohibits Plaintiff from "changing"[2/] her testimony, then Plaintiff's complaints about a hostile work environment did not occur until after the harassment stopped.  Defendant continues to urge the importance of the timing of Plaintiff's complaint about sexual harassment as "critical" to Defendant's Ellerth/Faragher defense.  Plaintiff asserts that even if the Court granted Defendant's motions in limine, material issues of fact would still require a jury to decide the issues.  The Court declines to further evaluate this issue because the Court has denied Defendant's motions in limine related to the alleged "change" in Plaintiff's testimony, and Defendant's argument is premised upon the Court's acceptance of Defendant's motion in limine.[3/]  Discussion of the Ellerth/Faragher defense follows.

---

[2/]  As discussed in the Opinion and Order denying Defendant's motion in limine, Plaintiff's deposition testimony does not constitute a "change" sufficient to invoke the principles of judicial estoppel urged by Defendant.

[3/]  The Court has further read and considered *Conatzer v. Medical Professional Building Services Corp.*, 95 Fed. Appx. 276 (10th Cir. 2004), relied upon by Defendant in Defendant's reply as supportive of Defendant's position.  The facts and circumstances of that case are very different.  That court found as a matter of law that no tangible employment action was taken and there was no dispute that the harassment ceased upon Plaintiff's complaint.  Defendant's argument is premised upon the granting of Defendant's motions in limine, which the Court has denied.

**B.     Tangible Employment Action**

In *Ellerth* and *Faragher*, the Supreme Court described an employer's affirmative defense to vicarious liability for a supervisor's conduct as requiring that the employer establish by a preponderance of the evidence two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Ratan*, 524 U.S. 775, 807 (1998).  *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).  The affirmative defense cannot be raised, however, if the harassing supervisor takes a "tangible employment action" against the subordinate employee.  *Faragher*, 524 U.S. at 807; *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014.

Defendant argues that there is no evidence from which a court could find that the Plaintiff suffered a tangible employment action and that this Court should enter such a finding as a matter of law.   If Plaintiff cannot establish that a tangible employment action occurred, the Ellerth/Faragher defense is available to Defendants and the jury should be so instructed.  Plaintiff argues that there is substantial credible evidence of such tangible employment action and that the question of whether Plaintiff suffered a tangible employment action must be submitted to the jury.   Plaintiff contends that the Ellerth/Faragher defense is not available to the Defendant if the jury first finds that the Plaintiff has suffered a tangible employment action.

The Court must keep clear the context in which these arguments are made.  Under Title VII employment discrimination law adverse or tangible employment actions can be significant in two different contexts.  The first  relates to the Ellerth/Faragher defense.

The second context is in determining whether a party has suffered an "adverse employment action" in retaliation for complaining about discriminatory conduct or in retaliation for not responding to the perpetrator's advances.  Confusion rises when courts intermix the two contexts or fail to distinguish between them with the correct language.  In this case, with respect to this argument, the parties are arguing only in the context of the Ellerth/Faragher defense.[4/]

Defendant, initially, asserts that the Court "apparently overlooked the fact that Plaintiff conceded that she did not suffer a tangible employment action as a result of the alleged harassment."  *See* Defendant's Motion for Reconsideration [Docket No. 135-1] at 5.  Plaintiff denies that Plaintiff conceded this point.  Defendant's argument is based, in part, on the statement of Plaintiff's counsel at oral argument. [5/]  Plaintiff's attorney explained the

_____

[4/] The parties filed additional supplemental briefs on this issue.  Plaintiff refers to a Third Circuit case in which Plaintiff suggests the Third Circuit concluded the same facts that establish a "tangible job detriment" could also constitute an "adverse employment action." Defendant responds to Plaintiff's supplemental authority by again asserting that Plaintiff has conceded that Defendant is not liable under a theory of strict liability.  The Court has addressed Defendant's arguments on this point.

[5/] At oral argument, Plaintiff's attorney stated, in addressing the *Ellerth* and *Faragher* defense, "And on this, in this case, to clarify any misunderstanding, Ms. Saffa did not and has not alleged that the firing was a tangible job detriment associated with harassment. I agree with defendant's counsel that on this record and in this cause of action, she separately alleged a hostile work environment that created an abusive environment and then she separately alleged retaliation in the form of an adverse job action that was her termination."  *See* Transcript of Oral argument, attached as Exhibit "A" to Defendant's Motion for Reconsideration [Docket No. 135] p.5 of 22.

statement which Defendant has focused upon both in Plaintiff's Response brief and at oral argument on the motions in limine.   Based on the arguments of counsel and the presentations of the parties in the briefs the Court cannot find that Plaintiff has conceded that no tangible employment action occurred.

Plaintiff maintains that the tangible employment action taken against Plaintiff in Plaintiff's sexual harassment claim was not the firing of Plaintiff, but was Plaintiff's treatment before she was fired.   Plaintiff argues that tangible employment action is not limited to firing, failure to promote, or reassignment.   Plaintiff asserts that a tangible employment action occurs where the acts complained of carry a "significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects."   *See* Plaintiff's Brief *citing Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004).

In *Hillig v. Rumsfeld*, the Tenth Circuit Court of Appeals discussed "adverse employment action" in a retaliation action.   In discussing retaliation claims, the Tenth Circuit did note that "adverse employment action" is defined liberally.

> We "liberally define[ ] the phrase 'adverse employment action' . . . . Such actions are not simply limited to monetary losses in the form of wages or benefits.  Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand."  One factor that strongly indicates a challenged action is an "adverse employment action" is that the action causes "harm to future employment prospects."  Nonetheless, "a mere inconvenience or an alteration of job responsibilities," is not an adverse employment action.

*Hillig*, 381 F.3d at 1031 (*citations omitted*).  In *Hillig* the District Court  concluded that Hillig had not established that she suffered an actual tangible injury based on the Supreme Court's decision in *Ellerth*.  The Circuit Court noted that *Ellerth* involved employer liability for sexual harassment under Title VII rather than the retaliation claim which was at issue in

*Hillig.* "The judge here so held even though Ellerth involved employer liability for sexual harassment under Title VII, because, in his view, the Tenth Circuit had adopted Ellerth's definition for all retaliation claims. We disagree." By footnote the Court objected to the District Court's reliance on an unpublished opinion and pointed out, "Second, in *Watson*, we cited *Ellerth* for the definition of 'tangible employment action,' but did not equate 'adverse employment action' to 'tangible employment action.' Instead, we reiterated our longstanding rule that we liberally define adverse employment action and do not limit that term to 'monetary losses in the form of wages or benefits,' and 'take a case-by-case approach.'" *Hillig*, 381 F.3d at 1031, n.1. The Court continued:

> As the district judge noted, *Ellerth* did not purport to define the term "adverse employment action" for all employment discrimination claims. Rather, the issue in *Ellerth* was the scope of an employer's liability for sexual harassment where the employer was not shown to be at fault. As would be expected, the Court's analysis was concerned with agency principles, and the opinion explicitly noted that the "tangible employment action" definition adopted therein was "for resolution of the vicarious liability issue. . . ." Accordingly, the Court held that proof of an adverse "tangible employment action" was relevant insofar as it would preclude an affirmative defense by an employer that the employee unreasonably failed to avoid or reduce the harm suffered. Moreover, the Court made clear in *Faragher*, that although Title VII "mentions specific employment decisions with immediate consequences, *the scope of the prohibition is not limited to economic or tangible discrimination. . . .*".
>
> The limited scope of the decisions in *Ellerth* and *Faragher* was made even more clear in *Pennsylvania State Police v. Suders.* There the Court described *Ellerth* and *Faragher* as delineating two categories of cases where an employee claims the "adverse employment action" was a hostile work environment: "(1) harassment that culminates in a tangible employment action, for which employers are strictly liable, and (2) harassment that takes place in the *absence* of a tangible employment action, to which employers may assert an affirmative defense." Moreover, the Court specifically allowed

plaintiffs who allege hostile work environment claims to proceed, subject to the employer's affirmative defense, even where they "allege[ ] no tangible employment action." Thus the Court did not require a showing of a "tangible employment action" as part of a prima facie case under Title VII in either *Ellerth* or *Faragher*. Nor have our decisions imported this "tangible employment action" definition into all Title VII claims. The longstanding rule in our circuit has been to "liberally define the phrase adverse employment action" and not limit the term to simply "monetary losses in the form of wages or benefits." A major underpinning of this rule has been the "remedial nature of Title VII," reasoning that a liberal definition of Title VII is necessary to best carry out its anti-discrimination and anti-retaliation purpose.

*Hillig*, 381 F.3d at 1031-32 (*emphasis in original; citations omitted*). This Court does not read *Hillig* as expanding the Supreme Court's definitions in *Ellerth* and *Faragher* of tangible employment action in the context of the Ellerth/Faragher affirmative defense. [6/] Rather, *Hillig* recognizes the differing definitions in respect to a sexual harassment versus a retaliation claim. While less clear, it appears that *Hillig* finds the "tangible employment action" to be more restrictive or limited than the more liberally defined "adverse employment action."

*Hillig* quotes with approval language from *Ellerth* "which defined a 'tangible employment action' as one entailing 'a significant change in an employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig*, 381 F.3d at 1031. Other parameters are added from *Faragher.* "Moreover, the Court made clear in *Faragher*, that

_____

[6/] Defendant refers the Court to *Johnson v. E.A. Miller, Inc.*, 1999 WL 94827 (10th Cir. February 25, 1999), in which the Tenth Circuit Court of Appeals discussed adverse employment action within the context of a retaliation claim. The Court noted that an alleged reprimand did not constitute an adverse employment action because the plaintiff could not establish a causal connection between her protected activity and the employment action which occurred several months after the plaintiff's complaint.

-- 7 --

although Title VII 'mentions specific employment decisions with immediate consequences, *the scope of the prohibition is not limited to economic or tangible discrimination. . . ." Hillig*, 381 F.3d at 1031 (*emphasis in original*) *citing Faragher*, 524 U.S. at 786.

The question for the Court, therefore, is whether the conduct described by Plaintiff and attributed to Dr. Lynch in January and February of 2003 constitutes the tangible employment action described by the Supreme Court in *Ellerth* and *Faragher*, sufficient to preclude Defendant's affirmative defense. The Court recognizes the importance of this issue to both parties and urges a thoughtful and thorough review of the case law and policy surrounding the issue.  Finding that *Hillig* does not expand or liberalize the *Ellerth* description of tangible employment action and finding no other dispositive Tenth Circuit law, other circuits may be helpful in determining whether the conduct in this case rises to level of tangible employment action such that Defendant is held strictly liable for the conduct of Dr. Lynch without the benefit of its affirmative defense.

 The primary emphasis of the briefing of the parties has been with regard to whether or not this issue was conceded, the causal connection (or lack thereof) to the firing, and some discussion of adverse employment action in retaliation cases.  The parties are invited to submit, prior to the Pretrial Conference scheduled on January 12, 2006, any additional authority specifically directed to whether the particular conduct constitutes a tangible employment action that does or does not preclude the *Ellerth/Faragher* affirmative defense.

*Ellerth* and *Faragher* draw the line beyond which the employer is strictly liable with principles of agency law.  As acts of the supervisor become the official acts of the employer, they become tangible employment actions such that the employer is held strictly

responsible.  When the acts are private acts unrelated to the authority of the company, liability attaches only when notice of the acts are properly reported and not corrected.

The Supreme Court confirmed this distinction in a recent case finding that constructive discharge may or may not constitute a tangible employment action depending upon whether the acts of the supervisor causing the constructive discharge are official company acts.

> Unlike injuries that could equally be inflicted by a co-worker, we stated, tangible employment actions "fall within the special province of the supervisor." who "has been empowered by the company as . . . [an] agent to make economic decisions affecting other employees under his or her control." *Ellerth* at 762.  The tangible employment action, the Court elaborated, is, in essential character, "an official act of the enterprise, a company act." *Ibid.*  It is "the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Ibid.*  Often, the supervisor will "use [the company's] internal processes" and thereby "obtain the imprimatur of the enterprise." *Ibid.*  Ordinarily, the tangible employment decision "is documented in official company records, and may be subject to review by higher level supervisors." *Ibid.*  In sum, we stated, "when a supervisor takes a tangible employment action against a subordinate [,] . . . it would be implausible to interpret agency principles to allow an employer to escape liability." *Id.*, at 762-763, 118 S. Ct. 2257.

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004).

Most treatise authority discussing Supreme Court and circuit cases emphasize the official nature of the supervisor acts in a tangible employment action.  One writer finds the authority of the supervisor more important than the action taken and provides a list of considerations from Ellerth and Faragher.

> The Ellerth/Faragher Court defined TEA's [tangible employment actions] as actions in which the supervisor necessarily employs powers delegated by the employer.  A TEA thus is an action that only a supervisor has the power to take.  If a co-equal

employee could have done the deed, the deed does not qualify. This is the crux of the TEA definition. The Court drew the essential demarcation between TEA's and non-TEA/environmental cases in order to exclude co-worker harassment cases from the rule of uniform imputation. The key, then, is not so much the dimension of the action taken against the subordinate, but the source of the power the supervisor uses to take that action. If that power is derived from the authority the supervisor derives from his relationship with the employer, the action taken is a TEA, regardless of whether it alters the subordinate's status in an ultimate sense. If the power is nothing more than the power that any employee receives from being included in the workplace, then the action is not a TEA.

* * * *

In Ellerth/Faragher, the Supreme Court identified qualities that characterize an act as a TEA. A TEA

> 1.    "falls within the special province of the supervisor, [who] had been empowered by the company as a distinct class of agent to make economic decision affecting other employees under his or her control";
> 2.    "[is] the means by which the supervisor brings the official power of the enterprise to bear on subordinates";
> 3.    requires an official act of the enterprise, a company act;
> 4.    constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, denial of a raise or a decision causing a significant change in benefits;
> 5.    in most cases inflicts direct economic harm;
> 6.    in most cases is documented in official company records, and may be subject to review by higher level supervisors.

By their terms, the first four of these factors are essential conditions to finding an act to be a TEA. The last two, economic harm and documentation/review, are typical, but not inevitable, characteristics of a TEA. By treating these two traits in this way, the Court evinced an intent that decision makers

> engage in analysis responsive to the context.  For example,
> there may be cases where the employee is NOT harmed
> economically, but in which it is nevertheless decided that the
> supervisor's act constitutes a TEA.  Likewise, there may be
> situations in which the action taken is not reported and does not
> receive higher management's imprimatur, but is nevertheless a
> TEA.  The opportunity for upper management to review may be
> crucial in many cases, but will not be helpful in other cases.
> Nevertheless, Professor Michael Harper has argued that the
> last listed factor, "documentation and opportunity for review," is
> the only one that really matters, and has advocated limiting
> TEA's to those supervisor acts that are "recorded or reported,"
> and that receive the higher management's imprimatur.

Grover, "After Ellerth: The Tangible Employment Action in Sexual Harassment Analysis,"

35 U. Mich. J.L. Reform 809 (Summer 2002) (*footnotes omitted emphasis in original*).

A review of other circuits finds cases on both sides of this issue.  *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 654-55 (5th Cir. 2002) ("While Tulane is correct that *Ellerth* acknowledged that in most cases a tangible employment action inflicts economic harm, the Supreme Court did not state that loss of an economic benefit was required in all cases.  We conclude that Green's demotion, together with the substantial diminishment of her job responsibilities, was sufficient to constitute a tangible employment action."); *Reinhold v. Commonwealth of Va.*, 151 F.3d 172, 175 (4th Cir. 1998) ("As the Supreme Court made clear in *Ellerth*, a 'tangible employment action' requires '*a significant change in employment status.*'  While Reinhold alleges that she was assigned extra work and suffered other harm as a result of her rejection of Martin's sexual advances, she does not allege that she experienced a change in her employment status akin to a demotion or a reassignment entailing significantly different job responsibilities.") (*citations omitted, emphasis in original*); *Conatzer v. Medical Professional Bldg. Services Corp.*, 95 Fed. Appx. 276 (10th Cir. 2004) (change of schedule that occurred prior to complaint of harassment,

grant of medical leave at plaintiff's request, and reprimand with no loss of pay or benefits but based on plaintiff's falsification of job application not tangible employment action); *Roberts v. County of Cook*, 2004 WL 1088230 (N.D. Ill. May 12, 2004) (finding a factual question of adverse employment action when the plaintiff "admitted that Flick did not decrease her salary, but she equated her reduced job duties to that of a 'glorified cleaning lady.'").

In a classic case of bad facts making bad law, the Second Circuit Court of Appeals in *Jin  v. Metropolitan Life Ins. Co.*, 310 F.3d 84 (2nd Cir. 2002), found that the sexual harassment itself was sufficient to constitute a tangible employment action when there was no termination or other official company act and the Plaintiff had failed to avail herself of established complaint procedures.  The acts of the plaintiff's supervisor were especially egregious causing the court to find that the supervisor used his supervisory authority to impose "the added job requirement that she submit to weekly sexual abuse in order to retain her employment."   The opinion has been criticized by one commentator as losing the distinction the Supreme Court has drawn between threats by a supervisor that do result in a tangible act of the employer and those that do not.  *See* Woodford, "Tangible Employment Action: What did the Supreme Court Really Mean in Faragher and Ellerth?," 19 Lab. Law 63 (Summer 2002) ("If the Second Circuit's reasoning is correct and a supervisor's repeated demands for sex acts alone is sufficient to constitute a 'tangible employment action,' the distinction that the Supreme Court sought to draw between supervisory actions that culminated in a tangible act of the employer and the actions of supervisors that do not result in ultimate action by the employer is lost.") (*footnotes omitted*).

The Court has reviewed the instances about which Plaintiff complains.  Plaintiff asserts that the actions by Dr. Lynch, including papering Plaintiff's file, causing Plaintiff to be counseled for tardiness, causing Plaintiff's tardiness to be documented and brought to the attention of Plaintiff's superiors where it was not documented or complained of before, and acting to isolate Plaintiff, constitute tangible employment action.  Plaintiff maintains that the actual termination of Plaintiff was not the tangible employment action.  At trial the evidence may show that the complaints asserted by Plaintiff are or are not an integral part of the decision to terminate Plaintiff.

This Court cannot at this time find as a matter of law that the acts complained of are or are not tangible employment actions.   At trial, the Court will determine, based upon the evidence presented, if the actions about which Plaintiff complains constitute a tangible employment action.

Defendant additionally develops a causation argument in which Defendant asserts that because the harassment stopped the alleged harassment did not result in a tangible employment action because the cessation of the harassment breaks the causal connection as a matter of law.  Initially, Defendant's argument is based upon Defendant's contention that it has "never been disputed" that the alleged harassment ended in November.  However, Defendant mischaracterizes what Plaintiff disputes.  Plaintiff did agree that the harassment that was specifically "directed to Plaintiff" by Dr. Lynch ended in November 2002. However, Plaintiff contends that Dr. Lynch continued to make inappropriate jokes and comments in Plaintiff's presence.  Plaintiff maintains that she reported these instances.  *See* Plaintiff's Response Brief to Motion for Summary Judgment, [Docket No. 76-1, ¶ 21,

Plaintiff's Additional Facts, ¶ 46].  Plaintiff also argues that the tangible employment action taken by Dr. Lynch did not end in November.

Defendant refers the Court to *Jones v. Rent-A-Center, Inc.*, 240 F. Supp. 2d 1167, 1179 (D. Kan. 2002)[7/], and *Duran v. Flagstar Corp.*, 17 F. Supp. 2d 1195, 1203 (D. Colo. 1998).  In each of those cases the courts concluded that a causal connection between the tangible employment action and the alleged sexual harassment must exist.  The Court has reviewed the cases and is comfortable that, in this case, Plaintiff has sufficiently alleged facts to support a causal connection between the tangible employment action and the alleged harassment sufficient to present a jury question.

### a.    Jury Question or Court Decision

Defendant further asserts that Plaintiff has conceded the point that no tangible employment action occurred because of Plaintiff's acknowledgment that Defendant is entitled to a jury instruction in the *Ellerth/Faragher* defense.  However, Plaintiff's view is that the "jury instruction" is a three-part instruction to which Defendant is entitled.  If the jury finds that a tangible employment action occurred, the jury does not reach the "second and third" prong of the offered instruction.  Plaintiff's position remains consistent given Plaintiff's explanation.

The Court is presented with the question of whether or not a tangible employment action occurred should be decided by the Court as a question of law or by the jury as a question of fact.  Plaintiff argues that whether or not a tangible employment action occurred

---

[7/] The *Jones* court appears focused upon the actual termination as the event which must be causally connected to the actions taken by the plaintiff's supervisor.  In this case, Plaintiff does not allege the firing as the tangible employment action.  The Court has already discussed this aspect of this issue.

is a jury question.  Defendant argues this is an issue for the Court to determine as a matter

of law.  No authority directed to this question has been presented by either side.  Based

upon the Court's preliminary review of the issue, the Court is inclined to treat this as a legal

issue for determination by the Court.  If the Court concludes that the actions as identified by

Plaintiff constitute a tangible employment action, the jury instruction on the *Ellerth/Faragher*

defense is not given.  If the Court concludes that the identified actions do not constitute a

tangible employment action, the jury instruction is given, and the remaining issues are

determined by the jury.

The parties are invited prior to the pretrial conference to present any authority

directed to this issue.  The Court notes that the Model Civil Jury Instructions for the Eighth

and Eleventh Circuits provide separate instructions for sexual harassment actions in which

a plaintiff has established a tangible employment action and actions in which a plaintiff has

not established a tangible employment action.  However, the jury instructions provide no

instructions for what constitutes a tangible employment action, which suggests that the

determination of whether a plaintiff has established a  tangible employment action is left to

the decision to the court.[8/]  The Court has located at least one Circuit opinion which, in a

remand to a district court, discussed the actions for the district court on remand, in terms

---

[8/] *See* Eighth Circuit Manual of Model Jury Instructions, Civil, 2001 (Instruction 5.41 "Sexual harassment – essential elements – by supervisor with tangible employment action) (Instruction 5.42 Sexual Harassment – essential elements – by supervisor with no tangible employment action); Eleventh Circuit Pattern Jury Instructions, Civil, 2000 (Instruction 1.2.2).  In the Fifth Circuit, the jury instructions appear to contemplate the presentation of the issue to the jury in cases in which there is a fact question as to whether the Plaintiff suffered a tangible employment action.  *See* Fifth Circuit Pattern Jury Instructions, Civil, 2005 (11.4.2).  The Tenth Circuit has no such civil pattern jury instructions.

of actions that the district court must take which suggest that the decision of whether or not a tangible employment action exists is a decision for the court.  *See Johnson v. Booker T. Washington Broadcasting Serv.*, 234 F.3d 501, 513 (11th Cir. 2000) ("On remand the district court should conduct 'such proceedings as it deems necessary for it to enter explicit findings of fact concerning the allegedly adverse nature of' Johnson's transfer, and 'clearly explain why it believes a reasonable person in [Johnson's] position would or would not have found the transfer to have been an adverse employment action.'") (*citations omitted*).  *But see Crosson v. Caremark, Inc.*, 212 F. Supp. 2d 875 (N.D. Ill. 2002) (plaintiff "failed to provide evidence that would allow a reasonable jury to conclude that she has suffered a tangible employment action. . . ."); *Roberts v. County of Cook*, 2004 WL 1088230 (N.D. Ill. May 12, 2004) *2 ("Following this case law and viewing the evidence in the light most favorable to Roberts, as we must on a motion for judgment as a matter of law, the Court finds that a rational jury could find that Roberts suffered a tangible employment action and, accordingly, the County was not entitled to the Ellerth/Faragher affirmative defense.").

**C.    "Negligence Claim"**

Defendant asserts that it is entitled to summary judgment on Plaintiff's "negligence" claim.  Plaintiff contends that Plaintiff has not asserted a claim based upon the negligence theory (to establish Defendant's liability).  Plaintiff objects to summary judgment taken against Plaintiff with respect to a claim that Plaintiff has not brought.  Defendant suggests Plaintiff's claim that it is not bringing a "negligence theory" to establish Defendant's liability is belied by statements in Plaintiff's complaint such as "Defendant had actual knowledge of Dr. Lynch's sexual harassment of Plaintiff but failed to take remedial measures to stop the offensive conduct or to otherwise respond appropriately to Plaintiff's repeated complaints.

. . ."  Such statements in the Complaint do not equate to a conclusion that Plaintiff is asserting negligence as Plaintiff's theory of employer liability.  Plaintiff  contends that the efforts taken by Defendant were insufficient to meet the *Ellerth/Faragher* defense, and such statements in the Complaint may be relevant to Plaintiff's contentions with regard to the defense.

The Court will not grant summary judgment against a party on a claim that a party has not brought.  The Court will insure in the pretrial order and the jury instructions that the negligence theory for establishing employer liability is not presented to the jury.

**D.    "Overlooking" of Undisputed Facts that Defendant Claims Establish the Absence of Subjectively or Objectively Offensive Conduct**

Defendant suggests that the Court merely counted the number of incidents (between 10 and 30 over three months) and concluded that a material fact question existed.  The Court did not, in denying Defendant's motion, merely tally the number of comments.  The Court considered the numerous comments, the time frame, the context in which the comments were made, the gender (or non-gender) nature of the comments, and the environment as a whole in denying, based on the applicable case law, Defendant's motion for summary judgment.

Defendant bases Defendant's argument, in part, on numerous "undisputed" facts which are, in fact, disputed by Plaintiff.  Defendant asserts that Plaintiff routinely told off-color jokes, and to support Defendant's argument, references affidavits of Plaintiff's co-workers.  Plaintiff maintains that she does not recall telling off-color jokes.[9]  Defendant notes

---

[9] Plaintiff references her deposition testimony at page 88.  Defendant refers, in part to affidavits of Plaintiff's co-workers, and in part to deposition testimony of Plaintiff which
(continued...)

that Plaintiff gave a co-worker the "Dill Doe," but Plaintiff denies it.[10] Defendant represents

that Plaintiff discussed her sex life at work and used the term "fuck buddy."   Defendant

references the deposition testimony of Ms. Christian and Dr. Lynch.  Plaintiff does not agree

to Defendant's representations.   Defendant contends that Plaintiff gave Dr. Lynch a

certificate for a one-hour massage.  Plaintiff notes that the gift certificate was for a one-hour

massage from a third-party who was a male masseuse.  Defendant represents that Plaintiff

invited Dr. Lynch to a Christmas party.  Plaintiff, in Plaintiff's materially disputed facts, denies

Defendant's representation.   Plaintiff's deposition testimony is hardly a model of clarity.

Plaintiff states that she doesn't remember, and may have jokingly asked Dr. Lynch to the

Christmas party.[11] Defendant notes that Plaintiff admits that not all comments were directed

---

[9] (...continued)
the Court cannot locate in the record.  (Defendant refers, in Defendant's motion to reconsider, to Plaintiff's motion for summary judgment, p. 11, ¶ 32.  Exhibits 13 and 14, referenced in the motion to reconsider, refer to affidavits of Plaintiff's co-workers.  In Defendant's original motion for summary judgment, Defendant also refers to Plaintiff's deposition, Exhibit 9, p. 231, ll 5 - 13, and p. 241, - p. 242.  The Court's "Exhibit 9" to Defendant's motion is 51 pages and ends at page 201 of the deposition.  The pages referenced by Defendant, pates 241 and 242 are not included in the record.)

[10] Defendant does not reference testimony regarding the "Dill Doe."  At oral argument on the motions in limine the parties clearly indicated that this fact was not an agreed to fact.

[11] The deposition testimony is less than clear.  Defendant's attorney asks Plaintiff if she suggested to Dr. Lynch that the two of them attend the Christmas party together.  "A: Joking or serious? Q: "Yes" or "no." A: I probably would say "no" then.  Q: No, you didn't? A: I don't recall that.  No, I might have said it joking, but I don't really remember, because I wasn't planning to go anyway.  Q: So your asking him to go to the Christmas party with you is a joke, but him saying things to you is sexual harassment.  Is that right? A: No. We're talking about going to a company party that you're expected to be at and everybody is asking if you're going to be going.  Q: And you would jokingly ask someone that you contend is sexually harassing you to attend a party with you?  Is that your testimony?  A: I don't really remember that."

towards Plaintiff.  Plaintiff does acknowledge this, however, Plaintiff references numerous comments that Plaintiff believed were specifically directed towards her and Plaintiff asserts many comments contributed to the "environment."  The Court has again reviewed the materials referenced by Defendant and cannot conclude that the facts as alleged by Defendant are undisputed.

Defendant refers the Court to *Burns v. Snow*, 130 Fed. Appx. 973 (10th Cir. 2005), as supporting Defendant's position that summary judgment is appropriate on the issue of severe or pervasive conduct when the plaintiff engages in the same kind of conduct about which the Plaintiff complains.  In *Burns*, the Tenth Circuit Court of Appeals noted that the plaintiff stated that she was shown four or five sexually-oriented photographs or cartoons, and approached a group of men in order to view one photo.  "When shown these and other sexual images at work, Ms. Burns acknowledged she sometimes responded by laughing or chuckling, or making lewd or crude comments which caused her coworkers to laugh."  *Id.* at 978.  Ms. Burns also "admitted that after she expressed being offended she was never shown them again."  *Id.*  Plaintiff additionally complained that her supervisor asked her out and suggested they get together.  However Plaintiff "admitted [her supervisor's] comments were 'just his sense of humor,' and that his and other coworkers' 'vulgar' senses of humor 'kind of rubbed off on [her].'  She also admitted she told Mr. Romero [that he] had a tight butt, and requested a copy of 'raunchy' jokes from him which . . . she shared with her teenage son."  *Id.*  One obvious difference between the case referenced by Defendant and the case presently before the Court is that in *Burns* the Plaintiff admitted or acknowledged the undisputed facts, admitted that she joked around and laughed, and admitted that she made certain comments to her supervisor about his anatomy.  In this case, Plaintiff disputes

many of the facts that Defendant maintains are undisputed.  The Court previously reviewed *Gross v. Burggraf Constr.*, 53 F.3d 1531 (10th Cir. 1995), and concludes that it is significantly different than the present case.

The record indicates numerous disputed issues of fact which should be presented to the jury.  Based upon the record, the Court concludes that a jury could determine that Plaintiff was both objectively and subjectively offended.

**E.    Retaliation Claim**

Initially, Defendant asserts that the Court has overlooked the "fact" that Plaintiff was disciplined for attendance and tardiness before Plaintiff complained about sexual harassment.   Defendant asserts that assuming Plaintiff first complained of sexual harassment in July of 2002, that Plaintiff's complaints came "at the end of a counseling session for attendance issues."  Defendant contends that, as a matter of law, Plaintiff cannot complain about retaliation when the disciplinary process began prior to the protected conduct.

Once again, Defendant presents one view of the facts and, based upon that view, contends that summary judgment is appropriate.  However, Plaintiff does not agree with Defendant's version of the facts, and the evidence presented by the parties <u>could</u> be interpreted differently by a jury.  Plaintiff maintains that the July 25, 2002 meeting was not a counseling session.  A "memo to the file" regarding "Tamme Saffa performance," dated August 6, 2002, indicates that Pam Williams "and I" met with Tamme Saffa to discuss "two recent problem situations in which communication was not satisfactory."  *See* Defendant's Motion for Summary Judgment [Docket No. 61] Exhibit L, page 20 of 36.  The memo notes one instance in which Dr. Lynch tried to locate Plaintiff in the hospital and learned that she

-- 20 --

had left the hospital to let a plumber in at her house but had not notified him that she was leaving.  The second instance is described as a time when Plaintiff was asked to be present to provide supervisory coverage of chemotherapy administration but Plaintiff had made a dental appointment and was not available for coverage on that date.  The memo continues: "Pam and I explained the importance of communicating with Dr. Lynch and obtaining his approval before she was away from the hospital or office during business hours.  We also stressed the importance of being aware of the Yale office physician schedule because she is routinely listed to provide back-up or primary supervisory coverage for the chemotherapy suite."  The document contains no mention of Plaintiff's tardiness or punctuality.  A second document, titled, "Oklahoma Oncology, Inc. Employee Counseling Form," and completed for "Tamme Saffa" provides that "counseling sessions with you to discuss the importance of being 'on time' were conducted on the following dates: 10/23/02, 11/26/02, 12/31/02, 1/24/03, 2/5/03, 3/17/03, 3/24/03."[12]   *See* Defendant's Motion for Summary Judgment, [Docket No. 61-3] Exhibit 2, attachment W, Page 35 of 36.

Although Defendant contends that Plaintiff was counseled in July for tardiness and punctuality, it is certainly possible, based on the record, for a jury to conclude that Plaintiff was not counseled until October or later.  Defendant relies upon two cases[13] as supporting Defendant's position that no fact issue is created when disciplinary conduct is initiated by

---

[12]   Saffa further disputes the existence of "counseling sessions" as described by Plaintiff.   Saffa recalls an informal meeting rather than a "counseling session."   *See* Defendant's Motion for Summary Judgment [Docket No. 61-1] Exhibit 9 at p. 23 of 52, deposition p. 90, ll 2 - 5.

[13]   *Clark County School District v. Breden*, 532 U.S. 268, 272 (2001); *Morgan v. Hilti*, 108 F.3d 1319, 1324-25 (10th Cir. 1997).

the employer prior to the retaliation.  However, neither case applies *if* a factual issue is created by the Plaintiff as to whether or not the disciplinary conduct was initiated prior to the employer's retaliation.  In this case, such a factual issue exists.

Defendant notes that Plaintiff has maintained that she was not counseled on punctuality or tardiness until October/November 2002.  Defendant suggests that Plaintiff "provides no explanation for why OOI [Defendant] would begin retaliating against her 3 - 4 months after the alleged complaint in July 2002, or why she was not terminated until April 2003. . . ."  However, Plaintiff does provide a rationale.  Plaintiff maintains that Defendant knew that she would be "always" late to work because of the start time of her child's school, and that Defendant accommodated this situation.  Plaintiff notes that she initially complained to Defendant about Dr. Lynch in July.  However, the first time that Plaintiff approached Dr. Lynch and told him that his comments and conduct were not acceptable was in October 2002.  *See* Defendant's Motion for Summary Judgment [Docket No. 61-1] Exhibit 9, Deposition of Saffa, p. 108, ll 21 - p. 110, ll 13.   Plaintiff has consistently maintained that after approaching Dr. Lynch, Dr. Lynch instigated the "papering" of Plaintiff's file.  Defendant's "counseling form" indicates Plaintiff was first "counseled" in October for punctuality, and was "counseled" once each month thereafter until her termination.  Plaintiff maintains that the counseling is inconsistent with her file because in late November 2002 and on December 31, 2002, Butcher admitted that Plaintiff's punctuality was improving.  Plaintiff maintains that the onset of "counseling" by Defendant gives rise to an inference of retaliation.  Plaintiff additionally has maintained that Dr. Lynch  was the instigator of the "papering" of Plaintiff's file, and that the problems that Defendant had with Plaintiff's punctuality began after Plaintiff complained to Dr. Lynch.

Defendant focuses on March 24, 2003, and notes that "for the first time ever" Plaintiff was, on that date, late for a bone marrow transplant.  Plaintiff does not deny being late for the transplant, but contends she was only ten minutes late.  Regardless, the Court cannot find as a matter of law based on this record, that Defendant is insulated from all liability because Plaintiff was late for a bone marrow transplant on March 24, 2003.  Based on the facts a reasonable jury could conclude that after Plaintiff complained to Dr. Lynch in October 2002, Dr. Lynch instigated the papering of Plaintiff's file and that Defendant then acted to terminate Plaintiff when presented with an opportunity that Defendant could represent as the "reason" for Plaintiff's termination – that is, repeated tardiness and being late to the bone marrow transplant.  Defendant's explanation is one interpretation of the facts in this record, but it does not preclude a different interpretation based upon the same facts.

Defendant additionally focuses on the favorable review given to Plaintiff by Dr. Lynch in November 2002 and Plaintiff's pay raise in December 2002 as inconsistent with Plaintiff's theory that Plaintiff was retaliated against after she complained initially in July 2002 and to Dr. Lynch in October 2002.  Plaintiff contends that these same incidents support Plaintiff's pretext argument.  The Court has reviewed the evidence and concludes summary judgment is inappropriate and that these issues should be presented to a jury.

Defendant additionally contends that Plaintiff has produced no evidence of pretext and that the Court has overlooked this fact.  In *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005), the Tenth Circuit Court of Appeals discussed pretext.

> A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a rational factfinder could rationally find them unworthy of credence. . ."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th

-- 23 --

Cir. 1997) (quotation omitted); *see also Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002).

> [T]he evidence which a plaintiff can present in an attempt to establish that a defendant's stated reasons are pretextual may take a variety of forms . . . . *A plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual.* A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's state reason for the adverse employment action was false. . .; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances. . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

> *Kendrick*, 220 F.3d at 1230 (citations and quotations omitted) (emphasis added).  the plaintiff's evidence can also allow for an inference that the "employer's proffered non-discriminatory reasons [were] either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir. 1994).

*Plotke*, 405 F.3d at 1102-03 (citations and emphasis in original).

Defendant contends that Plaintiff has no evidence that the reason for her termination was false because Plaintiff admits that she continued to be late for rounds.  However, Plaintiff maintains that Plaintiff was <u>always</u> late for rounds, that Defendant hired her knowing that she would be late for rounds, and that Plaintiff's tardiness was <u>not</u> a problem until after Plaintiff complained to Dr. Lynch about his conduct.  Plaintiff additionally presents numerous

arguments to support Plaintiff's position on pretext in Plaintiff's brief.  The Court is convinced that summary judgment is inappropriate.

Defendant suggests that the Court's analysis permits "an employee [to] act with impunity and insulate herself from any further disciplinary action merely by making a complaint of alleged harassment after being disciplined."  Defendant's Motion to Reconsider [Docket No. 135-1] at 11.  However, Defendant's argument is based upon Defendant's interpretation of the facts.  Plaintiff's view and presentation of the facts differs from Defendant's.  And, based upon the record, at least one reasonable conclusion is that Plaintiff was not counseled about tardiness or punctuality until after Plaintiff complained about sexual harassment.

### F.    Conclusion

The Defendant fervently believes and argues in good faith it's position for summary judgment.  The Court is unable to reach that conclusion.  Summary judgment would require interpreting numerous disputed facts in <u>Defendant's</u> favor.  Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The evidence and inferences therefrom must be viewed in a light most favorable to the nonmoving party.  *Conaway v. Smith*, 853 F.2d 789, 792 n. 4 (10th Cir. 1988). Summary judgment for Defendant would require finding that Plaintiff has conceded legal points which Plaintiff has consistently maintained that it has not conceded.  The Court therefore concludes, again, that summary judgment is inappropriate based upon the facts and materials presented by the parties.

Defendant's motion for reconsideration of the Court's Order denying Defendant's summary judgment is denied.  However, Defendant's motion has provided an opportunity for the Court to outline legal issues that must be resolved as this case is prepared for trial.

Dated this 3rd day of January 2006.

Sam A. Joyner
United States Magistrate Judge